UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

ANTHONY VELEZ,

                          Plaintiff,

             -against-

GIRRAPHIC LLC,

                      Defendant.

--------------------------------------------------------------------------------x

**COMPLAINT**

Civil Action No.
20 cv 5644

JURY TRIAL
REQUESTED

Plaintiff, ANTHONY VELEZ (hereinafter "Plaintiff"), by and through his attorneys, Margaret McIntyre, Attorney at Law, and DeLince Law PLLC, as and for his Complaint, alleges the following:

<u>INTRODUCTION</u>

1.      This is an action for injunctive and declaratory relief, reinstatement, back pay, front pay, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of disability, perceived disability and retaliation against Plaintiff because of his need for and use of reasonable accommodation of his disability, in violation of the New York City Human Rights Law ("NYCHRL"), §§ 8-102(16), 8-107(a)(1) and 8-107(7)(v) of the Administrative Code of the City of New York.

2.      This action is also brought to redress breach of contract; to seek payment of wages that Defendant wilfully refused to pay Plaintiff, in violation of §§ 190, 193, 198(1-a) and 198(3) of the New York State Labor Law ("NYLL"), plus an equal amount of liquidated damages for Defendant's failure to pay said wages; and to seek penalties for the failure on the part of Defendant Girraphic LLC (hereinafter "Defendant") to provide Plaintiff with a wage statement at each pay day that included Plaintiff's gross wages and all deductions taken from his pay, in violation of NYLL § 195(3).

JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1332 and

1343(a)(4) and 2201. Defendant is a foreign limited liability corporation incorporated in

California, which maintains its principle place of business in New York, Plaintiff is a citizen of

the State of New Jersey, and the amount in controversy exceeds $75,000. In addition, Plaintiff

invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

4.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a

substantial part of the events or omissions giving rise to the claims alleged below were

committed within this district.

PARTIES

5.      Plaintiff is a resident of the State of New Jersey.

6.      Defendant is a graphic design company based in Australia that delivers graphic

and creative services to the broadcast community worldwide, including in New York. Defendant

maintains its New York office at 251 West 30th Street, 6th Floor, New York, New York 10001.

7.      Upon information and belief, Defendant has approximately 40 employees,

including more than four in New York City, and is an employer within the meaning of §8-102 of

the Administrative Code of New York City as well as NYLL §§2, 190(3).

FACTS

8.      Plaintiff was employed by Defendant from June 10, 2019 until March 6, 2020, as

a Senior Real Time Developer.

9.      Plaintiff was employed at an annual salary of $110,000, to be paid monthly,

pursuant to a contract that ran from June 10, 2019, and was scheduled to end on June 9, 2020,

with the possibility of renewal. The contract did not alter Plaintiff's status as an at-will employee,

but did require that Defendant give Plaintiff two-weeks notice before terminating Plaintiff's

employment without cause, or else pay Plaintiff notice pay in an amount equal to two weeks pay.

The contract also provided that Defendant would not be required to give Plaintiff notice of

termination if Plaintiff committed "serious or repeated misconduct" as defined by the contract.

10.     Throughout his employment, Plaintiff received direct deposit of a net payment

amount of his monthly salary, but Plaintiff was never issued a pay stub or any similar document

outlining the types and amounts of deductions taken from his gross pay. Because of this failure, it

was only in March 2020, when Plaintiff was preparing his tax returns, that Plaintiff learned that

Defendant had never paid any income tax to New York State or reported Plaintiff's New York

earnings to New York State.

11.     At all relevant times herein, throughout his employment with Defendant, Plaintiff

was qualified to perform his job with Defendant.

12.     Plaintiff joined Girraphic as an award-winning 3D designer with 10 years of

experience in the gaming industry and interactive media. Well qualified for his role with

Defendant, he became productive even before his official start date of June 10, 2019,

immediately jumping in to work on a project with a short deadline.

13.     Although Plaintiff's contract called for a review of his performance after three

months, no such review was conducted. When he asked why the review was not conducted, he

was told by Grant Werle, General Manager USA, that it was not necessary, as Plaintiff's work

performance was more than satisfactory. Indeed, Mr. Werle sometimes referred to Plaintiff as the

company's "secret weapon."

14.     Plaintiff was careful to meet any deadlines that were imposed on him in the busy

workplace, and frequently worked into the evenings to ensure he completed what he needed to do

before leaving the office.

15.     Prior to March 4, 2020, Plaintiff received no substantive criticism of his work performance.

16.     Problems first arose in or about January 2020, when Plaintiff began suggesting that the company take safety precautions in response to the spread of the coronavirus Covid-19, especially in light of the company's extensive international travel engagements. Plaintiff first raised the subject by asking whether the company would plan to arrange for everyone to work from home if the virus came to New York. Grant Werle said the virus would not come "here." As January continued, Plaintiff continued to raise concerns, but Mr. Werle was generally dismissive and several times openly ridiculed Plaintiff's concerns.

17.     In early February 2020, Grant Werle and another employee traveled to South Korea to participate in a client's event.

18.     Upon information and belief, the client representatives in South Korea regularly wore masks and the event, which was held at a sports arena, had to be held without fans in attendance, because of widespread concerns about Covid-19 in South Korea at that time.

19.     Upon information and belief, Mr. Werle developed a bad cough during the trip to South Korea.

20.     Despite his experiences in South Korea, Mr. Werle's attitude toward Covid-19 was the same upon his return to New York. On one occasion, he coughed in the office, which was small, and then sarcastically said, so everyone could hear, that Plaintif should not worry as he did not have the coronavirus.

21.     Throughout February 2020, Plaintiff was becoming more and more concerned about the likely arrival of Covid-19 in New York and the need for everyone to take precautions.

4

He suggested to Mr. Werle that the company should distribute masks, take steps to keep the office sanitized and make a plan for employees to work from home.

22.     Mr. Werle became annoyed with Plaintiff for bringing up his concerns about preparing for Covid-19, and expressed his own belief that the disease was only likely to cause anyone a cold and should not disrupt company operations at all. Plaintiff got the impression from Mr. Werle's words and actions that he considered Plaintiff's concerns about the virus to be a sign of weakness and a compromised dedication to work.

23.     In or about the third week of February 2020, Plaintiff developed what first seemed to be a bad cold. Fearful of negative repercussions if he stayed home, Plaintiff went to work as usual. On the morning of Friday, February 21, 2020, Plaintiff became so ill during his commute to work that he realized he could not make it to work. Plaintiff then saw his doctor, who gave Plaintiff two flu tests that came up negative. Upon learning that Plaintiff also had pain in his leg, Plaintiff's doctor recommended Plaintiff go to a hospital emergency room due to fear he might have an embolism.

24.     At the hospital, Plaintiff was told he did not qualify for testing for Covid-19, as he had not traveled to Wuhan, China. While no embolism was detected, Plaintiff was diagnosed with an unidentified serious respiratory virus and sent home to treat his symptoms.

25.     The night he got home from the hospital, Plaintiff's condition became much worse. He was so congested, it was difficult to breathe or speak. For the next week, his whole body ached, particularly his legs, and he was so fatigued he could not get out of bed. Despite that, actual sleep was difficult because of Plaintiff's severe breathing difficulties and his fear that his breathing would stop. About mid-week, Plaintiff began coughing a great deal. In short, although Plaintiff was not eligible for Covid testing, his symptoms pointed to Covid-19.

26.     Whether or not it was Covid-19, the serious respiratory virus that Plaintiff suffered from constituted a serious impairment of his respiratory system, a disability as defined by N.Y.C. Admin. Code §8-102(16), which defines "disability" as "an impairment of any system of the body," including respiratory organs.

27.     Plaintiff remained out of work during the week from February 24 through February 28, 2020. His fiancé, who was caring for him in their home, kept Defendant apprized of Plaintiff's condition and ongoing need to be absent from work.

28.     Although Plaintiff did not ue the words "reasonable accommodation," Plaintiff clearly requested the reasonable accommodation for his disability in the form of a medical leave when he informed his employer that he could not work on February 21, 2020, and again throughout the week following.

29.     Because Grant Werle had been so dismissive of Plaintiff's concerns about Covid-19 and the idea of employees working from home, Plaintiff did not ask for permission to work from home when he felt better as opposed to simply returning as soon as he could.

30.     Moreover, Defendant had no policies in place regarding procedures whereby employees could request reasonable accommodation of disabilities.

31.     On Monday, March 2, 2020, Plaintiff returned to work.

32.     Upon his return to work that day, March 2, 2020, Plaintiff told Grant Werle that he had a follow-up appointment with his doctor on Thursday, March 5, 2020, and would not be at work that day. This too was a request for reasonable accommodation in the form of medical leave. Mr. Werle granted the request.

33.     Plaintiff's requests for reasonable accommodation of his disability in the form of medical leave caused no undue hardship to Defendant.

6

34.     On the morning of Wednesday, March 4, 2020, Plaintiff woke up feeling poorly

and unable to travel to the office. He posted a message on Defendant's Slack channel in the

morning, stating that he was staying home but was reachable. All of the New York staff would

have seen the post on Slack. At that time, Plaintiff hoped to be able to work if any work was

needed from him. No one contacted him that day.

35.     Again, Plaintiff was requesting a reasonable accommodation, this time in the form

of working from home on the day of March 4, 2020.

36.     On the evening of March 4, 2020, Mr. Werle sent Plaintiff an email falsely

accusing Plaintiff of having only advised the company that morning of the timing of his planned

doctor visit (which was actually scheduled for the next day as Plaintiff had told Mr. Werle),

thereby disrupting company planning and causing worry, and stating that he wanted to speak to

Plaintiff the next day. In the email, Mr. Werle also directed Plaintiff to cease posting information

about Covid-19 on the company's Slack. (Plaintiff had posted three news articles that related to

Covid and the tech industry.) Thus, it was clear that Mr. Werle was angry at Plaintiff for being ill

and for being away from the office due to illness, as well as for Plaintiff's having tried to inform

others in the company of the seriousness of Covid-19 and the need for the company to take

action.

37.     Thus, instead of reaching Plaintiff during the day on March 4, 2020, as Plaintiff

invited anyone to do, Grant Werle jumped to the conclusion that Plaintiff was simply advising

staff of his doctor visit (forgetting that he had already approved Plaintiff's anticipated absence on

March 5, 2020) and reacted by blaming Plaintiff rather than engaging in a cooperative dialogue

with him about how the company and Plaintiff could reach accommodation of Plaintiff's

disability. That is, Plaintiff may have been able to mitigate his inability to travel to the office that

day (or any future day). Or, Defendant could have taken steps to ensure that the office would be

maintained in a way that would keep Plaintiff safe from a contagious and deadly disease. Or,

Defendant could have adopted procedures to allow Plaintiff (and other employees) to work from

home. By reacting solely by blaming Plaintiff, Defendant failed to engage in the cooperative

dialogue with Plaintiff that is required by the New York City Human Rights Law, §§ 8-102 and

8-107(28)(a).

38.      On the evening of March 4, 2020, Plaintiff responded to Mr. Werle's email by

reminding him that he had posted a message on Slack that morning to say he would be reachable

at home, but no one had reached out to him during the day, and to also remind him that his doctor

visit had not been that day but was the next day, as he had already told Mr. Werle, and thus he

would not be in on Thursday. Plaintiff's email also expressed exasperation with Defendant's

indifferent response to Covid, to Plaintiff's well-being and to Plaintiff's efforts to make the

workplace more safe. From the email it should have been clear that Plaintiff was still suffering

from the same condition and was still looking for a better response from Defendant to Plaintiff's

disabling illness.

39.      Upon Plaintiff's return to the office on Friday, March 6, 2020, he was

immediately called to a meeting with Mr. Werle and Amanda Xeller, Defendant's Office and

Human Resources Manager, and told he was being sent home while the company decided what to

do about his employment over the weekend. It was clear to Mr. Velez that he was going to lose

his job.

40.      After leaving the office on Friday, March 6, 2020, Plaintiff forwarded to some

staff members an email that opened with the words, "Goodbye Girraphic. Respect is earned, not

given."

41.     Later on Friday, March 6, 2020, Plaintiff received notification that his Girraphic passwords had been disabled.

42.     On Monday, March 9, 2020, Plaintiff used his personal email to email Grant Werle to inquire about his works status. Mr. Werle replied that he would send him an answer the next day.

43.     The next day, on March 10, 2020, Mr. Werle emailed Plaintiff to say that the company had accepted Plaintiff's resignation. After Plaintiff replied that he had not in fact resigned, Mr. Werle responded that Plaintiff's email to staff on Friday, March 6, 2020, had been deemed a resignation, but if it was not, the Company was firing him for misconduct.

44.     Plaintiff did not resign from his employment. No reasonable employer would have taken Plaintiff's words to staff as a resignation.

45.     While Plaintiff took time off from work due to his disability (as he had no choice but to do so), Plaintiff was not actually granted the reasonable accommodation in the form of medical leave, in volation of the NYCHRL, N.Y.C. Admin. Code §8-102(16), because he was punished with termination for taking that leave.

46.     Defendant also retaliated against Plaintiff for having needed that reasonable accommodation, in violation of the NYCHRL, N.Y.C. Admin. Code §8-107(7)(v).

47.     On March 19, 2020, Mr. Werle emailed Plaintiff to say he had committed mutliple acts of misconduct in the form of lack of professionalism, disrespect, negativity, lack of productivity, poor job performance and insubordinate communication.

48.     Defendant's stated reasons for firing Plaintiff were false and a pretext for discrimination against Plaintiff based on disability or perceived disability and for retaliation against Plaintiff for his having sought and used medical leave as a reasonable accommodation.

9

49.     Plaintiff committed no misconduct in connection with his job that amounted to misconduct that would constitute cause for Defendant to fire Plaintiff.

50.     Prior to Plaintiff becoming ill, he had not been told by his manager that any of his behavior was considered msconduct, or even unacceptable.

51.     Defendant's explanation for the termination of Plaintiff was false, and a pretext for disability discrimination and retaliation against him for needing reasonable accommodation of his disability.

52.     Plaintiff was not paid for his last week of work.

53.     Plaintiff did not receive two weeks of notice of his termination and Plaintiff was not paid two weeks' pay in lieu of notice, as required by his contract if he was fired without cause without notice.

54.     Plaintiff's contract also provided for Plaintiff to take 20 days of paid annual leave, which included both sick and vacation pay, and that any unused annual leave would be paid upon the termination of his employment.

55.     At the time Plaintiff's employment was terminated, he had at least five days of accrued but unused annual leave.

56.     Plaintiff was not paid for his accrued but unused annual leave. Defendant offered Plaintiff an agreement whereby Defendant would pay Plaintiff an amount close to his week's pay and unused accrued leave if Plaintiff released of all claims against the company. Plaintiff did not do so, and the owed wages have not been paid.

57.     Due to the unlawful actions of Defendant, Plaintiff has suffered loss of income and fringe benefits which would have accrued to him.

58.     Due to the unlawful actions of Defendant, Plaintiff has suffered and continues to suffer emotional distress, mental anguish, humiliation and damage to his reputation.

59.     Pursuant to §8-502(c) of the Administrative Code of the City of New York, a copy of this complaint shall be served upon the New York City Law Department and the New York City Commission on Human Rights within 10 days of the filing of this action.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

60.     Plaintiff  repeats and realleges each and every allegation of paragraphs 1 to 59 of this complaint as if fully set forth herein.

61.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of his disability, in violation of the NYCHRL, §§ 8-102(16) and 8-107(a)(a) of the Administrative Code of the City of New York.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>

62.     Plaintiff  repeats and realleges each and every allegation of paragraphs 1 to 61 of this complaint as if fully set forth herein.

63.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of perceived disability, in violation of the NYCHRL, §§ 8-102(16) and 8-107(a)(a) of the Administrative Code of the City of New York.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

64.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 63 of this complaint as if fully set forth herein.

65.     Defendant's acts, practices, and policies described herein constitute a failure on the part of Defendant to engage in a cooperative dialogue with Plaintiff to try to agree on a reasonable accommodation of his disability, in violation of the NYCHRL, § 8-107(28)(a) of the Administrative Code of the City of New York.

AS AND FOR A FOURTH CAUSE OF ACTION

66.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 65 of this complaint as if fully set forth herein.

67.     Defendant's acts, practices, and policies described herein constitute a failure on the part of Defendant to provide Plaintiff with a reasonable accommodation of his disability, in violation of the NYCHRL, § 8-107(15) of the Administrative Code of the City of New York.

AS AND FOR A FIFTH CAUSE OF ACTION

68.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 67 of this complaint as if fully set forth herein.

69.     Defendant's acts, practices, and policies described herein constitute retaliation against Plaintiff for requesting reasonable accommodation of his disability, in violation of the NYCHRL, §§ 8-102(16) and 8-107(7)(v) of the Administrative Code of the City of New York.

AS AND FOR A SIXTH CAUSE OF ACTION

70.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 69 of this complaint as if fully set forth herein.

71.     Defendant has wilfully refused to pay wages earned by Plaintiff in his final week of employment during the first week of March, in the amount of $2,115.38, in violation of New York Labor Law §§193 and 198.

AS AND FOR A SEVENTH CAUSE OF ACTION

72.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 71 of this complaint as if fully set forth herein.

73.     Defendant breached its contractual obligation to pay Plaintiff two weeks of notice pay when Defendant terminated Plaintiff's employment without good cause on March 6, 2020, in the amount of $4,230.76.

AS AND FOR A EIGHTH CAUSE OF ACTION

74.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 73 of this complaint as if fully set forth herein.

75.     When Defendant breached its contractual obligation to pay Plaintiff two weeks of notice pay upon the termination of Plaintiff's employment without good cause on March 6, 2020, Defendant willfully violated NYLL §§193 and 198 because the notice pay in the amount of $4,230.76 was earned wages as defined by the NYLL by virtue of Plaintiff having performed on his employment contract, thereby earning the pay owed to him on discharge without cause.

AS AND FOR A NINTH CAUSE OF ACTION

76.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 75 of this complaint as if fully set forth herein.

77.     Defendant breached its contractual obligation to pay Plaintiff for accrued but unused annual leave in the amount of five days pay, in the amount of $2,115.38.

AS AND FOR A TENTH CAUSE OF ACTION

78.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 77 of this complaint as if fully set forth herein.

79.     When Defendant breached its contractual obligation to pay Plaintiff for accrued but unused annual leave in the amount of five days pay, in the amount of $2,115.38, Defendant willfully violated NYLL §§193 and 198 because the accrued but unused annual leave was earned wages as defined by the NYLL by virtue of Plaintiff having performed on his employment contract, thereby earning the right to receive accrued but unused annual leave on discharge for any reason.

<u>AS AND FOR A ELEVENTH CAUSE OF ACTION</u>

80.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 79 of this complaint as if fully set forth herein.

81.     Throughout Plaintiff's employment with Defendant, from June 10, 2019, through March 6, 2020, Defendant failed to provide Plaintiff with a wage statement at each pay day that included the rate of pay and specified each deduction from Plaintiff's gross pay, in violation of New York Labor Law § 195(3).

82.     Accordingly, Plaintiff is entitled to recover from Defendant damages in the amount of $250.00 per work day that the violations occurred, damages in an amount not to exceed a total of $5,000, pursuant to New York Labor Law § 198(1-d).

<u>DEMAND FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Declare, adjudge and decree that Defendant discriminated against Plaintiff on the basis of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

2.     Declare, adjudge and decree that Defendant discriminated against Plaintiff on the basis of perceived disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

3.     Declare, adjudge and decree that Defendant failed to engage in a cooperative dialogue with Plaintiff to try to agree on a reasonable accommodation of his disability, in violation of the NYCHRL, § 8-107(28)(a) of the Administrative Code of the City of New York.

4.      Declare, adjudge and decree that Defendant failed to provide Plaintiff with a reasonable accommodation of his disability, in violation of the NYCHRL, § 8-107(15) of the Administrative Code of the City of New York.

5.      Declare, adjudge and decree that Defendant retaliated against Plaintiff for his need for and use of reasonable accommodation of his disability, in violation of §8-107(7)(v) of the Administrative Code of the City of New York.

6.      Declare, adjudge and decree that Defendant wilfully refused to pay wages earned by Plaintiff in his final week of employment during the first week of March, in the amount of $2,115.38, in violation of New York Labor Law §§193 and 198.

7.      Declare, adjudge and decree that Defendant breached its contractual obligation to pay Plaintiff two weeks of notice pay when Defendant terminated Plaintiff's employment without good cause on March 6, 2020, in the amount of $4,230.76.

8.      Declare, adjudge and decree that when Defendant breached its contractual obligation to pay Plaintiff two weeks of notice pay in the amount of $4,230.76 upon the termination of Plaintiff's employment without good cause on March 6, 2020, Defendant willfully violated NYLL §§193 and 198.

9.      Declare, adjudge and decree that Defendant breached its contractual obligation to pay Plaintiff for accrued but unused annual leave in the amount of five days pay, in the amount of $2,115.38.

10.     Declare, adjudge and decree that Defendant wilfully refused to pay wages earned by Plaintiff in the form of accrued but unused annual leave in the amount of five days pay, or the amount of $2,115.38, in violation of NYLL §§193 and 198.

11.     Declare, adjudge and decree that Defendant failed to provide Plaintiff with a wage statement at each pay day that included the rate of pay and specified each deduction from Plaintiff's gross pay, in violation of New York Labor Law § 195(3).

12.     Order Defendant to reinstate Plaintiff in his job with Defendant.

13.     Order Defendant to pay Plaintiff damages in the amount equal to the value of all back and front pay, including benefits, that Plaintiff lost and will lose as a result of Defendant's discriminatory and retaliatory actions.

14.     Order Defendant to pay Plaintiff all wages earned but not paid to him by Defendant, including wage supplements.

15.     Order Defendant to pay Plaintiff liquidated damages in an amount equal to all wages earned but not paid to him by Defendant, including wage supplements.

16.     Order Defendant to pay plaintiffs pre-judgment interest on all earned but unpaid wages and on all back pay Plaintiff has lost due to Defendant's discriminatory and retaliatory actions.

17.     Enjoin Defendant from engaging in further discriminatory and retaliatory actions against Plaintiff.

18.     Award Plaintiff compensatory damages for Defendant's violations of the NYCHRL.

19.     Award Plaintiff punitive damages for Defendant's violations of the NYCHRL.

20.     Award Plaintiff all costs and reasonable attorney's fees incurred in connection with this action.

21.     Award such other and further relief as this Court may deem just and

proper.

Dated:      July 21, 2020
            New York, New York

                                        _____/s/_____
                                        Margaret McIntyre
                                        Attorney at Law
                                        11 Broadway, Suite 615
                                        New York, New York 10004
                                        (212) 227-9987


                                        Patrick J. DeLince
                                        DeLince Law PLLC
                                        299 Broadway, Suite 1310
                                        New York, New York 10007
                                        (212) 382-3544

17