UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ANTHONY VELEZ,                                                   :
                                                                 :
                           Plaintiff,                            :
                                                                 :     20 Civ. 5644 (JPC)
             -v-                                                 :
                                                                 :     OPINION AND ORDER
                                                                 :
GIRRAPHIC LLC,                                                   :
                                                                 :
                           Defendant.                            :
                                                                 :
-----------------------------------------------------------------X

Plaintiff Anthony Velez alleges that Defendant Girraphic LLC, his former employer, terminated him after he missed several days of work due to a respiratory infection, which might have been caused by COVID-19. Girraphic has filed a pre-discovery motion requesting that the Court either dismiss the case or grant summary judgment in its favor. Velez has moved to recover costs and fees pursuant to Rule 4(d) of the Federal Rules of Civil Procedure on the basis that Girraphic refused to waive service of process.

For the reasons stated below, the Court denies both motions in their entirety.

## I. Background

### A. Facts[1]

Velez worked as a Senior Real Time Developer for Girraphic, a graphic design company based in Australia that delivers graphic and creative services, from June 10, 2019 until March 6, 2020. Dkt. 1 ("Complaint") ¶¶ 6, 8. Velez was an at-will employee, with a one-year contract that was set to expire on June 9, 2020. *Id.* ¶ 9. Girraphic paid Velez an annual salary of $110,000. *Id.*

---

[1] The following facts are taken from the Complaint and are assumed true only for purposes of Girraphic's motion.

Velez's employment contract required Girraphic to either give him two weeks' notice or pay him two weeks' salary if it sought to terminate his employment without cause. *Id.* However, the contract did not require Girraphic to give prior notice of termination if Velez committed "serious or repeated misconduct" as defined by the contract. *Id.* Velez contends that while at Girraphic he received his salary via direct deposit, but was never issued a pay stub. *Id.* ¶ 10. He further asserts that he learned in March 2020 that Girraphic had never paid any income tax to New York State or reported his New York earnings to New York State. *Id.*

Velez contends that he adequately performed in his role at Girraphic. He alleges that, while employed, he was not given a performance review, but was told that his work was "more than satisfactory," *id.* ¶ 13, and that, prior to March 4, 2020, he received "no substantive criticism of his work performance," *id.* ¶ 15. He states that he was "careful to meet any deadlines that were imposed on him in the busy workplace, and frequently worked into the evenings to ensure he completed what he needed to do before leaving the office." *Id.* ¶ 14.

However, Velez contends that in January 2020, his relationship with his supervisor, Grant Werle, began to sour. He explains that this began when he suggested that the company make additional efforts to prevent the spread of COVID-19, particularly because Girraphic's employees participated in significant international travel. *Id.* ¶ 16. He alleges that Werle was dismissive of these concerns, *id.*, and that he "got the impression from Mr. Werle's words and actions that he considered Plaintiff's concerns about the virus to be a sign of weakness and a compromised dedication to work," *id.* ¶ 22.

Velez then became ill in late February 2020. *Id.* ¶ 23. Specifically, on the morning of Friday, February 21, 2020, he took sick on his way to work and went to his doctor. *Id.* He tested negative for the flu, and, after experiencing pain in his leg, was sent to a hospital emergency room

2

due to fear he might have an embolism. *Id.* Although he suffered from significant respiratory symptoms, which he suggests may have been the result of COVID-19, he was unable to obtain a COVID-19 test due to the limited nature of testing at that time. *Id.* ¶¶ 24, 25. Velez contends that his "severe respiratory illness" was a disability as defined under the New York City Human Rights Law ("NYCHRL"), which defines "disability" as "an impairment of any system of the body." N.Y.C. Admin. Code §8-102(16); Complaint ¶ 26. His illness caused him to miss work from February 24 through February 28, 2020, but during that time Velez's fiancé communicated with Girraphic about Velez's condition. Complaint ¶ 27.

Velez admits that he did not explicitly request a "reasonable accommodation" per se, but "clearly requested the reasonable accommodation for his disability in the form of a medical leave when he informed his employer that he could not work on February 21, 2020, and again throughout the week following." *Id.* ¶ 28. He contends that he did not request to work from home in light of Werle's previous dismissive comments about COVID-19, *id.* ¶ 29, and because Girraphic did not have any policies in place to request a reasonable accommodation, *id.* ¶ 30.

Velez returned to work on March 2, 2020. *Id.* ¶ 31. That day, he told Werle he would have to miss work on March 5, 2020 for a follow-up doctor's appointment. *Id.* ¶ 32. Velez contends that "[t]his too was a request for reasonable accommodation in the form of medical leave," which Werle "granted." *Id.* ¶ 32. On March 4, 2020, however, he felt ill and posted on Girraphic's Slack channel that he was staying home but was reachable. *Id.* ¶ 34. Velez alleges that this too was a request for a reasonable accommodation. *Id.* ¶ 35.

Later that evening, Werle emailed Velez, accusing him of only advising the company of his doctor's visit that morning. *Id.* ¶ 36. The Complaint suggests that Werle was under the impression that Velez's appointment had been that day, rather than the following day. *Id.* Werle

3

also directed Velez to stop posting about COVID-19 on the company's Slack channel. *Id.* According to the Complaint, this made "clear that Mr. Werle was angry at Plaintiff for being ill and for being away from the office due to illness, as well as for Plaintiff's having tried to inform others in the company of the seriousness of C[OVID]-19 and the need for the company to take action." *Id.* Velez suggests that Werle should have "engag[ed] in a cooperative dialogue with him" about how he and Girraphic "could reach accommodation of Plaintiff's disability," as required by the NYCHRL. *Id.* ¶ 37. Velez responded via email later that night, stating that he had alerted others on Slack that he would be reachable at home and that he actually had a doctor's appointment the following day, as he had previously informed Werle. *Id.* ¶ 38. He further expressed his "exasperation" that Girraphic had not put more protective measures in place to prevent the spread of COVID-19. *Id.* Velez contends that "[f]rom the email it should have been clear that Plaintiff was still suffering from the same condition and was still looking for a better response from Defendant to Plaintiff's disabling illness." *Id.*

When he returned to the office on March 6, 2020, he was called in to meet with Werle and Amanda Xeller, Girraphic's Office and Human Resources Manager. *Id.* ¶ 39. After this meeting, he was sent home "while the company decided what to do about his employment over the weekend." *Id.* He states that from this conversation, "[i]t was clear to Mr. Velez that he was going to lose his job." *Id.* "After leaving the office on Friday, March 6, 2020, Plaintiff forwarded to some staff members an email that opened with the words, 'Goodbye Girraphic. Respect is earned, not given.'" *Id.* ¶ 40. Later that day, he was notified that his Girraphic passwords had been disabled. *Id.* ¶ 41. He emailed Werle from his personal account on the following Monday, March 9, 2020, asking about his employment, to which Werle replied that he would answer the following day. *Id.* ¶ 42. Then, the following day, Werle notified Velez that Girraphic considered Velez's

4

"goodbye email" to be his resignation, and that Girraphic had accepted it. *Id.* ¶ 43. Velez disputes that this was a resignation. *Id.* ¶ 44. Then, on March 19, 2020, Werle emailed Velez to say that Velez had committed several acts of misconduct "in the form of lack of professionalism, disrespect, negativity, lack of productivity, poor job performance[,] and insubordinate communication." *Id.* ¶ 47. Velez contends that Girraphic's excuses for termination, *i.e.*, his supposed misconduct, were pretextual. *Id.* ¶¶ 48-51. He further asserts that he was not paid for his final week of work, *id.* ¶ 52; was not given the two weeks' warning or two weeks' severance pay, as required by his employment contract, *id.* ¶ 53; and was not paid for his remaining unused annual leave due under his employment contract, which included at least five days of unused leave, *id.* ¶¶ 54, 55, 56.

As a result of these actions, Velez alleges that he has and continues to suffer emotional distress, mental anguish, humiliation, and damage to his reputation. *Id.* ¶ 58.

**B. Procedural History**

Velez filed suit on July 21, 2020. *See* Complaint. Velez brings eleven causes of action, which can generally be grouped into two categories. First, he brings five discrimination claims. He alleges that Girraphic (1) intentionally discriminated against him on the basis of disability, in violation of the NYCHRL, N.Y.C. Admin Code §§ 8-102(16), 8-107(1)(a);[2] (2) intentionally discriminated against him on the basis of perceived disability, in violation of the NYCHRL, *id.* §§ 8-102(16), 8-107(1)(a); (3) failed to engage in a cooperative dialogue to agree on a reasonable accommodation, in violation of the NYCHRL, *id.* § 8-107(28)(a); (4) failed to provide a reasonable

---

[2] The Complaint lists the statutory basis for two claims as sections 8-102(16) and 8-107(a)(a). Because there is no section 8-107(a)(a) of the N.Y.C. Admin Code, the Court assumes that Velez intended to write section 8-107(1)(a), which describes unlawful discriminatory practices.

5

accommodation, in violation of the NYCHRL, *id.* § 8-107(15); and (5) retaliated against him for requesting reasonable accommodation, in violation of the NYCHRL, *id.* §§ 8-102(16), 8-107(7)(v). Second, he brings six contractual and wage and hour claims. He alleges that Girraphic (6) willfully refused to pay him wages that he earned during his final week of employment, totaling $2,115.38, in violation of New York Labor Law ("NYLL") sections 193 and 198; (7) breached its contractual obligation to pay him two weeks' notice pay; (8) failed to pay him two weeks' notice pay due to him as "earned wages," in violation of NYLL sections 193 and 198; (9) breached its contractual obligation to pay him accrued but unused annual leave equivalent to five days' pay; (10) failed to pay him out for his unused annual leave, in violation of NYLL sections 193 and 198; and (11) failed to provide him wage statements at the end of each pay day, in violation of NYLL section 195(3).

This case was initially assigned to the Honorable Valerie E. Caproni. On September 22, 2020, Girraphic filed a motion to dismiss, Dkt. 13, and two days later, the parties filed a proposed case management plan, Dkt. 16. The parties agreed to forestall discovery pending the resolution of the motion to dismiss. *Id.* This case was reassigned to the undersigned approximately one week later, *see* Dkt. 17, and the Court held a conference on October 2, 2020 to discuss the parties' proposed case management plan and Girraphic's pending motion to dismiss. During that conference, the Court permitted Girraphic to amend its motion to seek dismissal based on lack of diversity jurisdiction and to seek summary judgment, and further permitted Velez to file a motion for costs and fees pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.

Now before the Court are Girraphic's motion to dismiss or for summary judgment, Dkt. 23 ("Girraphic Motion"),[3] and Velez's motion for costs and fees pursuant to Rule 4(d), Dkts. 21, 22 ("Velez Motion"), 24.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving parties favor," *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009) (citation and internal quotation marks omitted), but is "not bound to accept as true legal conclusions couched as factual allegations," *id.* at 475-76 (citing *Iqbal*, 556 U.S. 662). As the Second Circuit has emphasized, in dealing with employment discrimination claims on a motion to dismiss, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

---

[3] Although Girraphic was granted leave to *amend* its motion, Girraphic filed a motion entitled, "Defendant's Supplemental Brief on Diversity Jurisdiction and for Summary Judgment." Girraphic Motion. In that motion, Girraphic "restates the argument[s] made in its Motion to Dismiss . . . for the clarity and convenience of the Court," *see, e.g.*, *id.* at 10, and requests, with no independent argument, that the Court grant summary judgment. Accordingly, the Court considers this the operative motion before the Court, and does not consider anything in Girraphic's initial motion to dismiss, Dkt. 13.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a judgment for the nonmoving party.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Then the burden shifts to the nonmoving party who "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* "When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

### III. Discussion

**A. Girraphic's Motion to Dismiss**

In seeking dismissal, Girraphic makes three main arguments: that the Court lacks subject matter jurisdiction over this case, that the Court should dismiss each cause of action pursuant to Rule 12(b)(6), and that the Court should grant summary judgment in its favor. The Court addresses each argument in turn, before addressing Velez's motion for costs and fees.

**1. Girraphic's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, . . . between . . . citizens of different States." 28 U.S.C. § 1332(a). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). "This burden is hardly onerous, however," as there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). A party opposing jurisdiction must then show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quoting *Wolde-Meskel*, 166 F.3d at 63). To meet that high bar, the "legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (quoting *Tongkook*, 14 F.3d at 785) (alteration in original).

Girraphic does not dispute that diversity of citizenship exists with Velez, but argues federal jurisdiction is lacking because Velez is unable to meet the amount-in-controversy requirement. Girraphic Motion at 7. Specifically, Girraphic contends that the enumerated damages alleged by Velez do not meet the $75,000 threshold, and that Velez "failed to plead emotional distress damages[,] only verbally asserting them for the first time during the October 2, 2020 Scheduling Conference." *Id.* (emphasis omitted). But the Complaint clearly alleges that Velez "suffered and

continues to suffer emotional distress, mental anguish, humiliation and damage to his reputation," Complaint ¶ 58, and specifically requests punitive and compensatory damages, *id.* at p. 16.

It is well-settled that a plaintiff who prevails on a discrimination claim brought under the NYCHRL "may recover compensatory damages for 'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses,'" and that even "garden-variety" cases "generally merit $30,000.00 to $125,000.00 awards." *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 319-20 (S.D.N.Y. 2018) (quoting *Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 328 (S.D.N.Y. 2016)); *see, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012). Velez alleges that he can reasonably expect a compensatory damages award of between $30,000 and $125,000. Dkt. 26 at 10-11. Girraphic, which does not address its jurisdictional argument at all in its reply brief, has made no effort to show that it is a "legal certainty" that Velez cannot obtain these damages. Accordingly, the Court finds Velez has met his burden to show that the Court has jurisdiction over this case.

**2. Girraphic's Motion to Dismiss for Failure to State a Claim**

Next, Girraphic moves to dismiss all of Velez's claims under Rule 12(b)(6). The Court begins with Velez's discrimination causes of action before moving to his contractual and wage claims.

    **a. Velez's Discrimination Claims**

        **i. Discrimination Based on Disability or Perceived Disability**

Under the NYCHRL, it is an unlawful discriminatory practice for an employer, because of an individual's "actual or perceived" disability, to discharge an individual or to otherwise discriminate against an individual in the terms, conditions, and privileges of employment. N.Y.C. Admin. Code § 8-107(1)(a). The NYCHRL defines a disability as "any physical, medical, mental

or psychological impairment, or a history or record of such impairment." *Id.* § 8-102(16). And "physical, medical, mental, or psychological impairment," in turn, covers "[a]n impairment of any system of the body," including the "respiratory organs." *Id.* § 8-102(16)(a). "To establish a case of disability discrimination [under the NYCHRL], a plaintiff must show that she suffers from a disability, and the disability caused the behavior for which she was terminated." *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 04993 (LGS), 2014 WL 2933190, at *17 (S.D.N.Y. June 27, 2014) (quoting *LaCourt v. Shenanigans Knits, Ltd.*, 966 N.Y.S.2d 347 (Table), 2012 WL 6765703, at *3 (Sup. Ct. 2012)).

Velez has alleged sufficient facts to state a claim for intentional discrimination. He has alleged that he had a disability in the form of a serious respiratory virus that may have been the result of COVID-19. Complaint ¶ 26. He also contends that his employer, Girraphic, knew of this disability, *see, e.g.*, *id.* ¶ 27, or at least perceived that he had a disability, *id.* ¶ 48. Velez alleges that his employer was "angry at [him] for being ill and for being away from the office due to illness, as well as for Plaintiff's having tried to inform others in the company of the seriousness of [COVID]-19 and the need for the company to take action," and, after chastising him multiple times, terminated him for taking a medical leave. *Id.* ¶ 36.

In its motion to dismiss, Girraphic attempts to paint its own version of the facts. For instance, Girraphic argues that Velez was "not punished for taking a leave of absence," and "instead was terminated for cause due to insubordination and poor job performance." Girraphic Motion at 10-11. But it is black-letter law that, "[i]n reviewing the sufficiency of a complaint," the Court must accept "its factual allegations, and the reasonable inferences that can be drawn therefrom, as true." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). Girraphic also contends that the Court should not consider COVID-19 or suspected COVID-19 to be a disability for "public

11

policy" reasons. *See* Dkt. 27 at 3-5. But Girraphic utterly fails to ground this argument in the text of the NYCHRL, which provides an expansive definition of "disability" to include a "physical . . . impairment," defined as "[a]n impairment of any system of the body." N.Y.C. Admin. Code § 8-102. Accordingly, the Court denies Girraphic's motion to dismiss Velez's intentional discrimination claims.

### ii. Failure to Provide a Reasonable Accommodation

The NYCHRL further provides that failing to provide a reasonable accommodation for a person with a disability and retaliating against a person for requesting a reasonable accommodation are discriminatory practices. N.Y.C. Admin. Code § 8-107(7), (15)(a). It also requires an employer engage in a cooperative dialogue with the individual so that they can agree on an appropriate reasonable accommodation. *Id.* § 8-107(28)(a). The NYCHRL defines a "reasonable accommodation" as "such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business," with the burden on the covered entity to prove undue hardship. *Id.* § 8-102(18). It mandates that the employer "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer]." *Id.* New York courts have emphasized the broad nature of the NYCHRL, holding that "there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation." *Phillips v. City of New York*, 884 N.Y.S.2d 369, 378 (App. Div. 2009), *overruled on other grounds Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 836 (2014).

Velez has alleged sufficient facts to support a plausible claim that Girraphic denied him a reasonable accommodation and retaliated against him for requesting one. He contends that he

requested multiple "reasonable accommodations" consisting of (1) medical leave on February 21, 2020 and the following week, Complaint ¶ 28, (2) a doctor's appointment on March 5, 2020, *id.* ¶ 32, and (3) the ability to work from home on March 4, 2020, *id.* ¶ 35. He alleges that these requests did not cause undue hardship on Girraphic, *id.* ¶ 33, but that his employer was "angry at [him] for being ill and for being away from the office due to illness, as well as for Plaintiff's having tried to inform others in the company of the seriousness of [COVID]-19 and the need for the company to take action," *id.* ¶ 36. He alleges that Girraphic did not engage in a cooperative dialogue with him. *Id.* ¶ 37. He further alleges that he had a meeting with his boss and the Human Resources manager that made "clear to [him] that he was going to lose his job," *id.* ¶ 39, and that he was then terminated from his role, *id.* ¶¶ 41-44.

Girraphic makes a litany of arguments for dismissal of Velez's accommodation claims, all of which largely amount to disagreements with Velez's view of the facts. For instance, Girraphic argues that it did not have the opportunity to engage in a discussion with Velez regarding an appropriate accommodation, and that Velez resigned and/or was fired for cause. *See* Girraphic Motion at 12-13. But Velez alleges otherwise, and, again, all facts in the Complaint must be assumed true, and all inferences must be taken in Velez's favor. *Krys*, 749 F.3d at 128. Then, relying upon a *New York Post* article, Girraphic contends that his accommodation claims must fail because "COVID-19 was not yet a concern in New York City" and the Governor of New York had not yet declared a state of emergency. Girraphic Motion at 12-13. This argument too is unavailing. Velez contends that he had a respiratory disease—which he admits might not have been COVID-19—and that he was terminated because of it. The prevalence of COVID-19 and the timing of the state of emergency are, frankly, irrelevant.

Girraphic also argues that Velez's accommodation claims must fail because he received a reasonable accommodation—time off. *See id.* at 12. Although Girraphic is correct that a leave of absence can be a reasonable accommodation, *see, e.g.*, *LaCourt*, 2012 WL 6765703, at *5, courts regularly hold that the fact an employee took time off does not destroy their claim for failure to accommodate under the NYLL, *see, e.g.*, *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) ("[The plaintiff's] allegations are not vitiated simply because [the plaintiff] took an extended leave, even though [the defendant] purportedly failed to provide him such an accommodation."). This is particularly true here because Velez alleges that he took time off, not that Girraphic granted him permission to do so in each instance.

In addition, Girraphic argues that Velez never requested an accommodation. But, as noted above, Velez outlines numerous instances that he contends should have been viewed as requests for a reasonable accommodation. Moreover, under the NYCHRL, "it is clear that 'under certain circumstances, an employer is required to act proactively and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation.'" *Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03 Civ. 4359 (SLT) (ARL), 2013 WL 3491057, at *29 (E.D.N.Y. July 10, 2013) (quoting *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012)), *aff'd*, 568 F. App'x 5 (2d Cir. 2014). In the event that an employee's disability is "obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled"—the employer may have a duty to accommodate regardless of whether the employee made a request for an accommodation. *Id.* at *28 (internal quotation marks omitted); *see also Haight*, 2014 WL 2933190, at *17 (concluding that "the NYCHRL creates an independent duty to investigate feasible accommodations and affirmatively requires that, even in the absence of a specific request, an employer shall make reasonable

14

accommodation to enable a person with a disability to satisfy the essential requisites of a job provided that the disability is known or should have been known by the [employer]" (internal quotation marks omitted)).

Finally, Girraphic contends that Velez's second cause of action, for intentional discrimination on the basis of perceived disability, and fourth cause of action, for failure to provide a reasonable accommodation, are duplicative and therefore must be dismissed. Girraphic Motion at 14-15. This is without merit. Courts regularly consider claims that an employee was discriminated against for being disabled or for being perceived as disabled. *See, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 60 (2d Cir. 2005). Although the Court makes no findings as to whether a jury could find in favor of Velez on both claims, Velez can proceed under both theories.

### b. Velez's New York Labor Law and Contractual Claims

In addressing Velez's labor law and contractual claims, Girraphic again simply argues that its own view of the facts does not support Velez's claims. First, Girraphic contends that Velez was not owed notice pay either under a breach of contract theory or under the NYLL because he resigned or was terminated for cause. Girraphic Motion at 16. Again, this is a disputed fact at this stage, which cannot be addressed on a motion to dismiss. Second, Girraphic attacks Velez's contractual and NYLL claim for accrued but unused vacation days, saying that the claim must be dismissed because "[t]he number of days owed for accrued time off is not known because it is believed by Plaintiff that Defendant took unsanctioned work from home days in violation of company policy." Girraphic Motion at 16-17. Girraphic further states that "[a]ny monies conclusively shown to be owed will be remitted," but "presently no facts come to light showing anything would be owed." *Id.* at 17. But Velez need not prove his case at the motion to dismiss stage. Third, and finally, Girraphic disputes Velez's claim under NYLL section 195(3), which

alleges a failure to provide him with wage statements, on the basis that his wage statements were available to him online at any time. *Id.* at 17-18. Although Girraphic may be able to prove that this is true at a later stage, this does not mean that, taking the facts alleged in the Complaint as true, Velez has failed to state a claim.

## B. Girraphic's Motion for Summary Judgment

Finally, Girraphic, without much argument, conclusorily states that "[t]here is no genuine dispute of material fact and therefore Defendant is entitled to summary judgment as a matter of law." *Id.* at 9-10. Although it is not entirely clear, the Court assumes that Girraphic means to request that the Court grant summary judgment based on the arguments made in the motion to dismiss of its brief. But the parties have agreed to forestall discovery in this case pending the disposition of this motion, and it is "[o]nly in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). The record—and Girraphic's own brief—reflect substantial factual disagreements, and the parties have not had the opportunity to conduct discovery to support their arguments. This is clearly not the rare case in which a pre-discovery motion for summary judgment would be appropriate.

## C. Velez's Motion for Costs and Fees

Under Rule 4(d) of the Federal Rules of Civil Procedure, "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1). For a corporation, the plaintiff may request that the defendant waive service via a writing addressed "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.* 4(d)(1)(A)(ii). In the event that a defendant fails, without good cause, to waive

service, the court "must impose upon the defendant" both "the expenses later incurred in making service" and "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." *Id.* 4(d)(2).

Velez seeks expenses and fees on the basis that Girraphic violated Rule 4(d), asserting that its attorney, Barry Janay, Esq., declined to waive service on its behalf. *See* Velez Motion. This argument fails. Simply put, "service of process on an attorney not authorized to accept service for his client is ineffective." *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990); *see also Macon v. Corr. Med. Care, Inc.*, No. 12 Civ. 6150G, 2015 WL 4604018, at *3 (W.D.N.Y. July 30, 2015) (collecting cases); *see also Perez v. City of Westchester*, 83 F. Supp. 2d 435, 441 (S.D.N.Y.), *aff'd*, 242 F.3d 367 (2d Cir. 2000) ("The only request for waiver of personal service was made by [the plaintiff's] lawyer in a letter to defense counsel. Rule 4(d), however, requires, among other things, that the notice and request be addressed directly to the defendant, that it be accompanied by a copy of the complaint, and that it include a prepaid means of compliance in writing. None of these requirements was met. Accordingly, plaintiff's motion for reimbursement of service costs and for an attorney's fee is denied."). Velez does not point to any facts supporting a finding that the attorney was authorized for service. And Girraphic asserts that Mr. Janay was not its authorized agent for purposes of accepting service on its behalf. Dkt. 25 at 3-4.[4] Accordingly, the Court will not mandate that Girraphic reimburse Velez for service costs or fees.

---

[4] Girraphic explains, at the time Velez sent a July 22, 2020 letter to Mr. Janay requesting waiver of service on behalf of Girraphic, "Mr. Janay had been retained to help in the severance negotiations between Girraphic and Anthony Velez. He was not Girraphic's general counsel nor was it reasonable to assume he was an authorized agent for the purpose of service." Dkt. 25 at 4. Velez provides no facts to suggest otherwise.

## IV. Conclusion

For the foregoing reasons, both Girraphic's motion to dismiss or for summary judgment and Velez's motion for costs and fees are denied. By May 17, 2021, the parties shall submit a revised proposed case management plan with updated dates.

The Clerk of the Court is respectfully directed to terminate the motion pending at Docket Number 21.

SO ORDERED.

Dated: May 10, 2021
       New York, New York

                                        JOHN P. CRONAN
                                 United States District Judge